

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. CR405-331 |
| | ) |
| JOHN SCOTT, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

On March 13, 2007, Ted Johnson, counsel for defendant John Scott, filed a motion to withdraw the guilty plea which defendant entered in this case on December 6, 2006. Doc. 200. The motion asserted that the government had breached the plea agreement by failing to dismiss the charges brought against co-defendant Krystll Gardner and by failing to honor its promise that defendant would receive a "5K.1.1 downward departure" for his testimony against co-defendant Niblack. The motion

further asserted that Mr. Johnson had provided ineffective assistance of counsel by failing to file certain motions and by neglecting to "solidify" the conditions for his plea, thus prejudicing defendant. The government filed a pointed response, characterizing defendant's allegations as "totally false" and "not credible." Doc. 202, at 2, 7. In a brief order entered on March 21, 2007, the District Judge found defendant's contentions to be without merit and summarily denied the motion to withdraw his guilty plea. Doc. 205.

On April 5, 2007, the undersigned conducted a hearing to inquire further into the representations made by counsel in the motion to withdraw the guilty plea. Specifically, the Court sought to explore what reasons, if any, counsel had for affirmatively stating that the government had breached the terms of the plea agreement and that he had "prejudiced Mr. Scott" by providing ineffective assistance of counsel. Doc. 200.

### A. Ineffective Counsel Claim

In addition to asserting that defendant Scott had "expressed concern" about the quality of the representation provided by Mr. Johnson, the motion to withdraw the guilty plea affirmatively states that "Defendant's

counsel provided ineffective assistance of counsel" by failing to file certain motions (described as a "Demurrer" to the indictment and a particularized motion to sever) and that "counsel's failure to solidify" the plea conditions had "prejudiced Mr. Scott." Doc. 200. But when questioned about these affirmative assertions during the Court's inquiry, Mr. Johnson made very clear that he did not personally believe that he had ever rendered ineffective assistance of counsel to defendant Scott. He explained that the examples of ineffectiveness listed in the motion reflected *Mr. Scott's* beliefs, not his own beliefs, and he acknowledged that he raised the ineffectiveness claim solely because Mr. Scott requested that he do so. Mr. Johnson further explained that he filed the motion to "protect" himself and to bring to the Court's attention that defendant was unhappy with his services.

Counsel's explanation for asserting his own ineffectiveness as a ground for withdrawal of the guilty plea is not acceptable. An attorney does not serve as a mere mouthpiece or alter ego for his client, obligated to urge any motion or argument that his client wishes him to file. <u>Thomas v. Tenneco Packaging Co.</u>, 293 F.3d 1306, 1337 (11th Cir. 2002) ("An attorney should not be an unreflecting conduit through which the opinions or desires

of a client or witness are permitted to flow unchecked."). Rather, an attorney has a duty to exercise his independent professional judgment and to file only those motions or raise only those claims that have potential merit. Id.; Welch v. Artus, 2007 WL 949652, at *17 (W.D.N.Y. March 29, 2007). Further, an attorney must adhere to the ethical standards of the profession, which preclude an attorney from making "a false statement of material fact or law" to a Court or other tribunal, Rule 3.3, Georgia Rules of Professional Conduct, or from advancing an unwarranted claim or defense. Georgia Rule 3.1.[1] Thus, if a client insists that an attorney file a motion or take a position that the attorney does not personally believe to have any factual or legal merit, "the attorney must stand his . . . ground and refuse to act in a manner that flies in the face of the relevant ethics rules." Thomas, 293 F.3d at 1327-28. "Given this duty, it follows that an attorney cannot 'file first and think later,' . . . thereby neglecting to employ his or her independent professional judgment to consider the plausibility

---

[1] "The federal court is entitled to rely on the attorney's knowledge of the state code of professional conduct applicable in that state court." In re Snyder, 472 U.S. 634, 645 n.6 (1985). Thus, this Court may charge counsel with knowledge of, and hold him accountable to, the Georgia ethics rules. Thomas, 293 F.3d at 1323 n.25. Furthermore, Local Rule 83.5(d) specifically adopts the Georgia Rules of Professional Conduct as the ethical standard expected of attorneys who practice in this Court.

and the appropriateness of what is asserted in the filed document." Thomas, 293 F.3d at 1327 (citation omitted).

In affirmatively asserting his personal belief that he rendered ineffective assistance of counsel by not filing certain motions (motions that he now characterizes as "frivolous"), counsel admittedly violated these precepts. Counsel concedes that his motion was inartfully framed but states that it was his intent to "protect" himself and to bring to the Court's attention that his client had expressed dissatisfaction with his services. As the Court suggested to Mr. Johnson during the inquiry, the more appropriate means to accomplish that goal was to file a motion to withdraw as counsel, not to file a motion to withdraw the guilty plea asserting facts and legal conclusions that counsel knew were unfounded. "Independent judgment is an essential ingredient of good lawyering, since attorneys have duties not only to their clients, but also as officers of the court, to the 'system of justice' as a whole." Thomas, 293 F.3d at 1327 (quoting Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1546 (11th Cir. 1993)) ("An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly.")).

## B. Breach of Plea Agreement

The motion to withdraw the guilty plea also asserted that the government breached the plea agreement by not honoring its alleged promises to (1) dismiss charges against co-defendant Krystll Gardner and (2) ensure that defendant receive a "5K1.1 downward departure" for his testimony against co-defendant Niblack. Doc. 200. Characterizing these contentions as "totally false," "factually and legally impossible," and entirely "baseless," doc. 202 at 2, 5, the government pointed out that Krystll Gardner entered a guilty plea on October 30, 2006, over two months before defendant Scott entered his guilty plea on January 8, 2007, thus making it impossible for the government to promise a dismissal of charges against Ms. Gardner as a condition of defendant's plea. Id. at 2-3. The government further noted that not only did defendant's plea agreement contain no substantial assistance provision, but that defendant Scott never provided any assistance nor testified against co-defendant Niblack (who entered his own guilty plea to a felony information on February 6, 2007).

At the inquiry, Mr. Johnson tendered a letter from former AUSA Robert M. Brennan dated August 18, 2006 which addressed the

government's *initial* plea offer, a copy of which was appended to the letter. In this letter, Mr. Brennan indicated that although the government was "not inclined to link any guilty plea by Mr. Scott with any proposed disposition of Ms. Gardner's case . . . , the government's interest in securing a felony conviction against Ms. Gardner would decrease significantly" if defendant Scott plead guilty. Mr. Johnson explained that while he had had extensive conversations with Mr. Brennan regarding the disposition of Ms. Gardner's case, he "was mistaken" in asserting in the guilty-plea withdrawal motion that *Mr. McEvoy* (who inherited this case from Mr. Brennan) had ever agreed to dismiss charges against Ms. Gardner, stating that Mr. McEvoy had simply agreed to look into the matter. Mr Johnson further conceded that as Mr. Scott was aware when he entered his guilty plea that Ms. Gardner had previously plead guilty, he knew that his plea was not conditioned upon the dismissal of charges against his girlfriend. With respect to the alleged government promise that defendant would receive 5K1.1 consideration for his testimony against Mr. Niblack, Mr. Johnson acknowledged that since Niblack had entered a guilty plea there was no prospect that his client would be testifying against that co-

defendant. He further conceded that while 5K1.1 consideration was discussed, it was "never promised."

Again, it is clear that Mr. Johnson based the motion to withdraw Mr. Scott's guilty plea upon factual assertions and legal arguments that he did not personally believe to have any merit. This is a charitable way of saying that Mr. Johnson filed a motion that falsely represented the underlying facts and applicable law. Such a lack of candor to this court violates Georgia Bar Rule 3.3, which precludes a lawyer from "knowingly mak[ing] a false statement of material fact or law to a tribunal," and Georgia Bar Rule 3.1, which precludes a lawyer from "knowingly advanc[ing] a claim or defense that is unwarranted under existing law." Although an attorney who knowingly falsely states the facts or law to a court risks disbarment, Georgia Bar Rule 3.3, it does not appear that this maximum penalty should be imposed against Mr. Johnson in this instance, for two reasons: First, at the time he filed the motion Mr. Johnson had lost favor with his client and was endeavoring to "protect" himself by presenting the motion that his client insisted that he file. While this was not a proper course of action, Mr. Johnson did telegraph to the court in the motion that it was primarily "Mr.

Scott" who had concerns about the effectiveness of counsel (though admittedly Mr. Johnson does positively state his own ineffectiveness). Second, the factual and legal misstatements made by Mr. Johnson were so blatantly inaccurate and unsupported that the Court was not deceived by the motion's transparent falsehoods and was able to deny the motion to withdraw the guilty plea in short order. Thus, while Mr. Johnson filed a motion that misstated the facts and the law, the motion was so obviously bogus that it is unlikely that counsel believed that his statements would deceive the Court or actually cause the Court to allow defendant to withdraw his plea.

Nevertheless, the fact remains that Mr. Johnson has fallen beneath the standards expected of lawyers who practice before this Court. Rather than exercising independent professional judgment, Mr. Johnson chose to serve as an "unreflective conduit" or mouthpiece for his client by filing a motion that he now concedes contained deliberate factual and legal misrepresentations. Therefore, I recommend that at the conclusion of this case Mr. Johnson be suspended from practice before this Court for a period of five years and that, as a condition of his readmission, he be required to

demonstrate that he has earned no less than 100 "ethics" hours of continuing legal education during this five-year suspension.

**SO REPORTED AND RECOMMENDED** this 11Th day of April, **2007.**

/s/ G.R. Smith
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**